SOLO SALES, INC., Plaintiff-Appellee, v. NORTH AMERICA OMCG, INC., Defendant-Appellant.

Second District   No. 2—97—1151

Opinion filed November 5, 1998.

C. Robert Tobin, of Tobin & Ramon, of Belvidere, for appellant.

Jeffrey E. Hardyman, of Brassfield, Cowan & Howard, of Rockford, for appellee.

JUSTICE RATHJE delivered the opinion of the court:

Defendant, North America OMCG, Inc., appeals the entry of summary judgment in favor of plaintiff, Solo Sales, Inc. Defendant contends that (1) genuine issues of material fact preclude the entry of summary judgment; and (2) if no genuine issues of material fact exist, summary judgment should be entered in its favor. We affirm.

Defendant manufactures industrial equipment. Plaintiff, a manufacturer's representative, acts as an agent for various manufacturers to sell the manufacturers' products to third parties. In December 1994, the parties entered into an oral agency agreement. During the agency relationship, plaintiff approached Dorco, a Wisconsin company, about purchasing defendant's machines. Dorco indicated that it wished to purchase three machines. Defendant was reluctant to sell three machines at once because of the substantial amount of money involved and the possibility that the machines would not perform as Dorco expected. In June 1995, instead of purchasing three machines, Dorco agreed to purchase one machine and lease a second machine with the option to return it to defendant if Dorco so desired. Dorco also had the option, however, of purchasing the second machine and a third machine, both at discounted prices. As part of the negotiation of the contract, plaintiff agreed to reduce its sales commission on all three machines from its typical 5% to 4$^{1}$/2%.

The original lease was for four months. Subsequently, Dorco and defendant agreed to extend the lease through March 1996. In December 1995, plaintiff terminated its agency relationship with defendant. In April 1996, pursuant to the June 1995 agreement, Dorco purchased the machine (the second machine) that it had been leasing. In January 1997, Dorco purchased the third machine contemplated in the June 1995 agreement. Defendant paid plaintiff its commission for the sale of the first machine and for the lease of the second machine through December 1995. Defendant refused to pay plaintiff any commission for the lease payments or the sales of machines that occurred after December 1995.

Plaintiff filed suit seeking to recover commissions for the remaining lease period and for the sales of the second and third machines. The parties filed cross-motions for summary judgment. The trial court entered judgment of $29,262 in favor of plaintiff. Thereafter, defendant timely sought leave to file a late notice of appeal (see 155. Ill. 2d R. 303(d)), which we granted.

■ A court should enter summary judgment when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1996). When all parties seek summary judgment, they invite the trial court to decide the issues presented as a matter of law, and the entry of summary judgment for one party or the other is generally proper. *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 979 (1997). We review a grant of summary judgment *de novo*. *McNamee v. State of Illinois*, 173 Ill. 2d 433, 438 (1996).

■ Plaintiff's theory of recovery rests upon the procuring cause rule. The procuring cause rule allows a salesperson to recover commissions on sales made after the termination of the agency relationship if the salesperson "procured the sales through its activities prior to [the] termination" of the agency relationship. *Penzell v. Taylor*, 219 Ill. App. 3d 680, 689 (1991). It is an equitable doctrine designed to protect a salesperson who, although no longer an agent or employee when the sale is made, has done everything necessary to effect the sale. *Schroeder v. Meier-Templeton Associates, Inc.*, 130 Ill. App. 3d 554, 560 (1984). The procuring cause rule does not apply, however, if the contract between the parties specifies when commissions are earned. *Scheduling Corp. of America v. Massello*, 151 Ill. App. 3d 565, 568 (1987) (*Scheduling II*); see also *Technical Representatives, Inc. v. Richardson-Merrell, Inc.*, 107 Ill. App. 3d 830, 833 (1982) (procuring cause rule did not apply when the contract provided that the plaintiff "would receive commissions 'on sales during the period of this agreement' ").

Plaintiff alleges that its contract with defendant did not specify when it earned its commissions. The only agreements concerning payment were that plaintiff's standard commission would be 5%, that plaintiff would not get paid until defendant did, and that plaintiff would earn a commission on any sale made in its territory, even if plaintiff was not responsible for the sale. Plaintiff concludes that, since the agency agreement contained no specific provision concerning when it earned its commissions, the procuring cause rule should apply and it should receive a commission on the remaining lease payments and the sales of the second and third machines.

■ Defendant first contends that a genuine issue of material fact exists about whether the agency agreement provided for when plaintiff earned commissions. Defendant asserts that the agreement specified that plaintiff's right to a commission did not vest until the customer placed a purchase order. Although this is an important factual assertion, defendant's brief contains no citation to support it. While we have no duty to search the record to find support for an appellant's contentions of error (see *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)), in the interests of justice we have reviewed the record to determine if it supports defendant's assertion. Our review reveals that the only possible support for this assertion is an ambiguous statement made by Robert Sears, defendant's vice-president, during his deposition. Sears, who negotiated the contract with plaintiff, did not testify that the parties agreed to this provision. Instead, he testified only that this was his understanding. Moreover, when given the opportunity to explain the terms of the agency contract, Sears never included this as one of the terms. We do not believe that this ambiguous statement, which has no other support in the record, is sufficient to create a genuine issue of material fact.

■ Defendant next argues that the plaintiff cannot avail itself of the procuring cause doctrine because plaintiff, rather than defendant, terminated the agency relationship. Defendant explains that the procuring cause doctrine is designed to protect salespeople who are discharged by their employers to avoid paying them a commission. Defendant contends that "[t]he vast majority of Illinois Courts only apply the procuring [cause] rule to protect a salesman/agent when the employer/principal terminates the agency agreement." Defendant then cites four cases that it alleges support this contention. After reviewing the cases, we must conclude that none of them stands for the proposition for which defendant cited them.

The first case defendant relies upon, *Scheduling Corp. of America v. Massello*, 119 Ill. App. 3d 355 (1983) (*Scheduling I*), directly contradicts defendant's assertion. It involved a salesperson who quit and was permitted to recover commissions on those sales where he could prove that he was the procuring cause. *Scheduling I*, 119 Ill. App. 3d at 358, 366; see also *Scheduling II*, 151 Ill. App. 3d at 569-70 (on appeal after remand, holding that the trial court's finding that the salesperson was the procuring cause of several sales was not against the manifest weight of the evidence).

The remaining cases cited by defendant are similarly unpersuasive. None discusses any difference between a situation where the agent quits or one where the agent is fired. Moreover, none denies relief on the basis that the agent terminated the relationship. See *Pen-*

*zell*, 219 Ill. App. 3d at 689 (denying relief because the custom in both the industry and the employer's company was that agent did not earn a commission until the advertisements ran); *Technical Representatives*, 107 Ill. App. 3d at 833 (refusing to apply the procuring cause rule because the agency contract specifically provided that the agent would receive a commission only on sales made during the contractual period); *Heuvelman v. Triplett Electric Instrument Co.*, 23 Ill. App. 2d 231, 237 (1959) (holding only that "an agent or salesman who is the procuring cause of a sale is entitled to commission notwithstanding the fact that the sale was consummated by the principal personally or through another agent").

Since none of the cases that defendant relies upon differentiates between agents who are fired and agents who quit, and since previous cases have allowed agents who quit to recover under the procuring cause rule (see *Scheduling I*, 119 Ill. App. 3d at 365; *Schroeder*, 130 Ill. App. 3d at 560), we decline to hold that an agent is prohibited from recovering under the procuring cause rule simply because the agent rather than the employer ended the at-will relationship.

■ Defendant lastly contends that plaintiff has not met the requirements of the procuring cause rule. Defendant asserts that it was the procuring cause of the sale of the second and third machines because it continued to provide services to and thus convinced Dorco to purchase the machines. We believe that record reveals that plaintiff did everything it was required to do.

Sears testified that, when plaintiff told him that Dorco wanted to purchase three machines, he replied "That's crazy," and refused to sell Dorco three machines at once. Instead, defendant and Dorco entered into the contract described above. Thus, plaintiff clearly brought defendant a buyer that was ready, willing, and able to purchase the three machines, but defendant, for legitimate reasons or not, refused to consummate the deal.

Additionally, the structure of the agreement indicates that the parties contemplated that plaintiff would receive a commission for the sales of the second and third machines. Given the contract between Dorco and defendant which gave Dorco a discount on the purchase prices of the second and third machines, plaintiff agreed to reduce its commission rate on the sale of the first machine, which was not sold at a discount, to help compensate defendant for the reduction in the sale price of the second and third machines, for which plaintiff also received a reduced commission rate.

Further, the parties seem to agree that Dorco's decision to purchase the second and third machines depended upon how the first machine performed and how problems with it were resolved. Sears

testified, however, that, regardless of the status of the agency relationship, plaintiff was not to be involved in this process. He explained that plaintiff knew "nothing about the machinery," and that "[i]t's the customer's responsibility to contact us to resolve the problem. When you put the middleman in, you delay the process of getting to the solution." When asked to explain what plaintiff did not do but should have done to complete the sale, Sears could explain only that plaintiff quit and left him without a representative to cover Wisconsin and that plaintiff no longer worked for defendant when Dorco placed its purchase orders.

The evidence demonstrates that plaintiff did everything it was required to do to bring a buyer to defendant. Sears could identify nothing further that plaintiff should have done, other than remain employed. Since a cessation of the employment relationship is necessary before the procuring cause rule can apply, we fail to see how this could preclude its application.

After reviewing the record, we believe that the trial court properly found that no genuine issue of material fact exists and that judgment should be entered in favor of plaintiff. Defendant raises no issue concerning the amount of the judgment; therefore, we have no basis to disturb it.

We affirm the judgment of the circuit court of Winnebago County.

Affirmed.

McLAREN and RAPP, JJ., concur.